IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOSHUA A. FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:17-cv-00223 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| D. WELLS, *et al.*, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Joshua A. Freeman, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him adequate medical treatment for ulcerative colitis.[1] Defendants filed motions to dismiss (Dkt. Nos. 37 and 40), and Freeman responded, making this matter ripe for disposition. Having considered the record and for the reasons stated herein, the court will grant in part and deny in part the motion to dismiss of defendants Nurses Wells, Crawford, Parks, and Sellers, and Dr. Stevens and will grant the motion to dismiss of defendants Warden Kanode, Chief Physician Amonette, Health Services Director Herrick, and Deputy Director of Administration Scott.

I. BACKGROUND

Freeman alleges that on December 14, 2016, he started experiencing symptoms of ulcerative colitis. On December 15, 2016, Freeman submitted a request for services to the medical department at River North Correctional Center (River North), asking to be seen as soon

---

[1] Ulcerative colitis is "an inflammatory disease of the colon, or large intestine, which is often accompanied by bloody diarrhea. This inflammation does not go through the entire wall of the intestines and therefore does not result in fistulas. However, extensive inflammation may eventually require surgery for removal of the affected area." (Compl. Dkt. No. 1, 15.)

as possible "before the symptoms worsen." Defendant Nurse Crawford responded the next day and indicated that Freeman was on a list to be seen by the doctor. On December 19, 2016, Freeman was called to the medical department for a sick call evaluation by defendant Nurse Parks. Freeman advised Nurse Parks that his symptoms of ulcerative colitis were "persistent" and that he was experiencing increased rectal mucus and bleeding, abdominal pains, and discomfort. Nurse Parks said that Freeman would be placed on a list to see defendant Dr. Stevens and advised Freeman that he should return to the medical department if his condition worsened. Nurse Parks refused to provide or request an order of pain medication to alleviate Freeman's severe abdominal pains.

Approximately eight days later on December 27, 2016, Freeman filed an emergency grievance to the medical department, informing them that he needed to be seen because he was "experiencing symptoms and had developed an unbearable pain in [his] lower left abdomen." Defendant Nurse Wells responded that evening, deeming his grievance non-emergent and advising him that he was on the doctor's list.

On January 3, 2017, Freeman submitted another emergency grievance to the medical department, informing them that he was having "severe symptoms" of ulcerative colitis for over fourteen days and "severe abdominal pains and continuous rectal bleeding that was mixed with mucus" for nineteen days. He also told medical staff that the rectal bleeding was a lot more frequent and heavy and that the symptoms were far worse than they had been. Nurse Crawford responded that morning, deemed his grievance non-emergent, and advised him that he was placed on a list to be seen by the doctor.[2] On January 4, 2017, Freeman informed Nurse Sellers that his abdominal pain and rectal bleeding had worsened.

---

[2] She also indicted that Freeman should submit a request for medication renewals that he needed. However, Freeman states that he was not on any medication at that time.

On January 10, 2017, Freeman was seen by Dr. Stevens. Freeman described the severity of abdominal pains and advised that he was still defecating blood. Freeman claims that Dr. Stevens adopted Nurse Crawford's recommendation that Freeman continue medication,[3] which Nurse Crawford "made without [] ever speaking with [Freeman]." Freeman states that he showed Dr. Stevens that he should not take that medication because it "shouldn't be provided to a person suffering from abdominal pains and rectal bleeding." Freeman claims that he also informed Dr. Stevens that psyllium fiber "is not a medication to treat [u]lcerative [c]olitis." According to Freeman, Dr. Stevens disregarded everything that Freeman told him and continued the medication. When Freeman advised Dr. Stevens that he had not been provided pain medication for twenty-five days, Dr. Stevens told Freeman to utilize "sick call procedures and inform the nurses that you are in pain." Freeman told Dr. Stevens that he filed two emergency grievances and that with both he was told the grievance was deemed non-emergent with responses that responded that he was on the doctor's list. Freeman explained that he also informed "multiple nurses" that he was in pain and he was told that he needed to see a doctor first. Freeman allegedly told Dr. Stevens that he was still having severe abdominal pains and would like to be prescribed a pain medication, but Dr. Stevens did not prescribe a pain medication. Freeman also asked why he had not been prescribed an antibiotic to "fight off any infections that may have arisen due to the damaging inflammation and the daily bleeding," and Dr. Stevens said that he did not believe that Freeman had any infections in his body. Freeman asked him how he could know since no blood or stools were tested since June 2013. Dr. Stevens did not answer Freeman's question, but he said he would submit a referral for a gastroenterology

---

[3] It is unclear what medication Freeman should "continue," especially in light of Freeman's statement that he was not on any medication as of January 3, 2017.

3

consultation and order lab work. Freeman continued to suffer "severe abdominal pains and daily rectal bleeding" for nearly a month until February 7, 2017, when the symptoms "diminish[ed]."

Freeman argues that Dr. Stevens and Nurses Wells, Crawford, Parks, and Sellers were deliberately indifferent to his serious medical needs. These defendants argue that Freeman failed to allege that they acted with deliberate indifference, that they are entitled to qualified immunity, and that they are not liable for damages in their official capacities.

Freeman alleges that defendant Warden Kanode was deliberately indifferent to his serious medical in two ways. First, Warden Kanode failed to "intervene or correct implemented medical procedures utilized" at the facility. Second, Warden Kanode passively accepted medical staff's assurance of providing adequate medical care without conducting an independent investigation into Freeman's claims of being denied treatment for daily rectal bleeding and severe abdominal pains.

Freeman alleges that defendants Amonette, the Chief Physician of the Virginia Department of Corrections (VDOC); Herrick, the Health Services Director of the VDOC; and Scott, the Deputy Director of Administration, were deliberately indifferent to the serious medical needs when they developed or approved VDOC policies that did not include ulcerative colitis "as a chronic care condition." Freeman believes that they all knew ulcerative colitis could "deteriorate into a more serious problem" if left untreated.

These defendants argue that Freeman failed to allege that they were personally involved in violating his rights or deliberately indifferent, that they are entitled to qualified immunity, and that they are not liable for damages in their official capacities.

4

## II. DISCUSSION

**A. Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## B. Official Capacity Claims—Damages

To the extent Freeman brings this action against the defendants in their official capacities for damages, such relief is not available in § 1983 cases. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Therefore, the court will grant defendants' motions to dismiss as to claims for damages against them in their official capacities.

## C. Deliberate Indifference to Serious Medical Needs

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990).

6

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008); *Turner v. Kight*, 121 F. App'x 9, 13-14 (4th Cir. 2005) (plaintiff must show the delay, itself, caused substantial harm). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, Case No. 3:10cv90, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 3489661, at *6 (E.D. Va. 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

**1. Medical defendants**

Freeman alleges that beginning December 14, 2016, through at least February 7, 2017, he suffered symptoms of ulcerative colitis, including continuing and increasingly severe abdominal pain and rectal bleeding. Nurse Parks evaluated Freeman on December 19, 2016, and Freeman told her that he was suffering increased abdominal pain and rectal bleeding. She added him to a list to be seen by the doctor, but refused to provide or request pain medication for Freeman. Less than two weeks later, on December 27, 2016, Nurse Wells responded to Freeman's emergency grievance in which he complained that he was continuing to experience ulcerative colitis symptoms and that the abdominal pain had become unbearable. She determined that the grievance was non-emergent and advised Freeman that he was on a list to see a doctor. One week later, on January 3, 2017, Nurse Crawford responded to Freeman's second emergency grievance in which he complained that he continued to suffer increasingly severe symptoms of ulcerative colitis and that his rectal bleeding was heavier and more frequent. She determined that

7

his grievance was non-emergent and advised him that he was on the list to be seen by a doctor. The next day, Freeman informed Nurse Sellers that his abdominal pain and rectal bleeding had worsened. Approximately one week later (and twenty-six days after his initial request for medical treatment), on January 10, 2017, Dr. Stevens evaluated Freeman. Freeman advised Dr. Stevens that he continued to suffer "severe" abdominal pain and rectal bleeding. Dr. Stevens prescribed two medications that Freeman alleges "shouldn't be provided to a person suffering from abdominal pains and rectal bleeding." Dr. Stevens denied Freeman's request for pain medication but did refer Freeman for a gastroenterologist appointment and lab work. Freeman alleges that he continued to suffer in pain for approximately one month even after the visit with Dr. Stevens.

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Freeman, I conclude that he has stated plausible Eighth Amendment claims against Nurses Wells, Crawford, Parks, and Sellers, and Dr. Stevens. Accordingly, I will deny these defendants' motion to dismiss and give them the opportunity to file a motion for summary judgment.[4]

---

[4] These defendants also contend that they are entitled to the affirmative defense of qualified immunity. The court concludes, however, that, at least at this stage, they are not. The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 133 S. Ct. 9 (2012).

The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

In support of their defense of qualified immunity, defendants summarily assert that Freeman's allegations do not demonstrate a constitutional violation or the violation of a clearly established right. (Mem. in Supp. of Mot. D. 12, Dkt. No. 41.) The court has already determined that Freeman's allegations state plausible claims of violations

**2. Warden Kanode**

Freeman alleges that Warden Kanode was deliberately indifferent to his serious medical needs when he failed to "intervene or correct implemented medical procedures utilized" at the facility and when he accepted medical staff's assurance of providing adequate medical care without independently investigating Freeman's claims of being denied treatment for daily rectal bleeding and severe abdominal pains. To bring a constitutional claim against nonmedical prison personnel for deliberate indifference to a serious medical need, an inmate must show that the officials were personally involved with a denial of treatment, deliberately interfered with a health care provider's treatment, or tacitly authorized or were indifferent to the health care worker's misconduct. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). Freeman makes no such allegations against Warden Kanode. In fact, he does not allege that Warden Kanode was actually aware that Freeman was being denied any medical treatment.[5]

---

of a constitutional right. Further, Freeman's right at issue was clearly established. *Scinto v. Stansberry*, 841 F.3d 219, 236 (2016) ("A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976"). Accordingly, the court rejects defendants' qualified immunity argument.

[5] The court notes that in his response in opposition to defendants' motion to dismiss, Freeman states that Warden Kanode's "liability is found in his repeated refusals to at least question medical staff regarding the treatment even after being informed of the injuries [Freeman had] been suffering following the denial of treatment." Freeman does not allege in his complaint that Warden Kanode was "informed" that Freeman was not receiving medical treatment, and his response to the motion to dismiss does not allege any details to describe how Warden Kanode was allegedly informed of Freeman's untreated medical needs. The court does note, however, that Freeman submitted copies of grievances that he filed concerning his claims. (Dkt. No. 2.) In these documents, there are two grievance responses signed by Warden Kanode. The first, dated February 2, 2017, is a response to Freeman's complaint that the VDOC does not define ulcerative colitis as a chronic care condition. (Dkt. No. 2, 8.) Freeman does not mention that he was or is being denied any medical care in that grievance. (Dkt. No. 2, 6.) The second response, dated March 28, 2017, is a response to Freeman's complaint that he only received four weeks and five days of a six-week course of medication that Dr. Stevens had ordered for him. Warden Kanode's investigation of Freeman's complaint revealed that medical records reflected that Freeman was administered the full amount of medication ordered by the doctor. (Dkt. No. 2, 23.) Freeman does not complain in his grievance that he was suffering any pain, bleeding, or other symptom of ulcerative colitis for which he needed medical treatment. (Dkt. No. 2, 21.) And, there is no suggestion that after Warden Kanode's investigation, he had any reason to believe that Freeman was being denied medical treatment. The court also notes that, by March 2017 when the grievance was filed, Freeman's ulcerative colitis symptoms, by his own account, had already diminished.

9

To the extent Freeman alleges that Warden Kanode is liable under a theory of supervisory liability, his claim also fails. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Freeman has failed to allege facts that would establish the *Shaw* elements against Warden Kanode because he has not alleged any facts that suggest that Warden Kanode had actual knowledge that any of his subordinates were denying or delaying Freeman medical treatment. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Accordingly, the court will grant the motion to dismiss as to Freeman's claims against Warden Kanode.

### 3. Other non-medical defendants

Freeman alleges that defendants Amonette, Herrick, and Scott were deliberately indifferent to his serious medical needs when they developed or approved a VDOC policy[6] that did not include ulcerative colitis as a "chronic care condition," despite knowing that it could "deteriorate into a more serious problem" if left untreated. In response to these defendants' motion to dismiss, Freeman states that while these defendants did not have personal involvement

---

[6] Freeman specifically references VDOC Operating Procedure (OP) 720.2, *Medical Screening, Classification, and Levels of Care*. The court notes that other OPs also deal with institutional provision of medical care, such as OP 701.1, *Health Services Administration*.

with his treatment, the facility medical department's refusal to treat his condition was directly related to the defendants' actions and policies. Freeman argues that the defendants' "policies are the 'moving force' behind the denials of medical treatment" at River North, making them liable for violating the Eighth Amendment.

Freeman concedes that these defendants were not personally involved with denying him medical treatment, and he does not allege that they deliberately interfered with a health care provider's treatment. *See Miltier*, 896 F.2d at 854. To the extent Freeman argues that they tacitly authorized or were indifferent to the health care worker's misconduct based on VDOC policy, the court cannot conclude that Freeman has stated a plausible claim for relief against these defendants. While it is true that ulcerative colitis is not explicitly included in VDOC policy as a chronic care condition, there is nothing in the policy that would suggest that Freeman or any other inmate suffering ulcerative colitis should be denied medical treatment. Freeman does not allege why treatment of his condition under the non-chronic medical care provided to all inmates is inadequate under VDOC policy. VDOC OP 720.2, *Medical Screening, Classification, and Levels of Care*, available at https://www.vadoc.virginia.gov/about/ procedures/default.shtm#700 (last visited Mar. 30, 2019). Accordingly the court will grant these defendants' motion to dismiss.

## III. CONCLUSION

For the reasons stated herein, the court will grant in part and deny in part the motion to dismiss of defendants Nurses Wells, Crawford, Parks, and Sellers, and Dr. Stevens, and it will grant the motion to dismiss of defendants Warden Kanode, Chief Physician Amonette, Health Services Director Herrick, and Deputy Director of Administration Scott.[7]

---

[7] The defendants also filed motions to stay discovery. (Dkt. Nos. 32 and 42.) Inasmuch as the court dismisses Freeman's claims against defendants Kanode, Amonette, Herrick, and Scott, the court concludes that their motion to stay discovery is moot and, thus, will dismiss the motion. The medical defendants asked the court to rule

An appropriate order will be entered.

Entered: March 31, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

on their defense of qualified immunity before requiring them to respond to Freeman's discovery requests. Inasmuch as the court has now ruled on the qualified immunity defense, the court further denies their motion to stay discovery.