# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| JOSHUA A. FREEMAN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00223 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| D. WELLS, *et al.*, | ) | By: Robert S. Ballou |
|     Defendants. | ) | United States Magistrate Judge |

Plaintiff Joshua A. Freeman, a Virginia inmate proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, against Nurses Wells, Crawford, Parks, and Sellers, and Dr. Stevens, alleging that they denied him adequate and timely medical treatment for his ulcerative colitis while he was a prisoner at River North Correctional Center (River North).[1] Defendants' motion for summary judgment is ripe, and having considered the record and for the reasons stated, I grant Defendants' motion for summary judgment and dismiss this action.[2]

## I. BACKGROUND

Freeman was diagnosed with ulcerative colitis[3] in 2013. In June 2016, Freeman suffered a "flare up" of his condition which was successfully treated with medication, including mesalamine, MyTab, Metamucil, and Prilosec. Freeman alleges that on December 14, 2016, he experienced symptoms of an ulcerative colitis flare up, and submitted a request for services to the medical department the following day asking to be seen as soon as possible "before the

---

[1] By memorandum opinion and order entered March 31, 2018, the court dismissed Freeman's claims against Warden Kanode, Chief Physician Amonette, Health Services Director Herrick, and Deputy Director of Administration Scott, and also dismissed the claims for damages against defendants Nurses Wells, Crawford, Parks, and Sellers, and Dr. Stevens in their official capacities.

[2] This case is before the court on consent jurisdiction pursuant to 28 U.S.C. § 636(c).

[3] Ulcerative colitis is "an inflammatory bowel disease that causes long-lasting inflammation and ulcers in your digestive tract. Ulcerative colitis affects the innermost lining of your large intestine and rectum. Symptoms usually develop over time, rather than suddenly." *See* https://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/symptoms-causes/syc-20353326.

symptoms worsen." Defendant Nurse Crawford responded the next day and indicated that Freeman was on a list to be seen by the doctor.

On December 19, 2016, Freeman saw defendant Nurse Parks for a sick call evaluation and advised her that his symptoms were "persistent" and that he was experiencing increased rectal bleeding and mucus discharge, abdominal pains, and discomfort. Nurse Parks told Freeman that she would place him on a list to see the doctor and advised him to return to the medical department if his condition worsened. Freeman states that Nurse Parks refused to provide or request an order of pain medication to alleviate his severe abdominal pains. Freeman contends that Nurse Parks was "fully aware" of his rectal bleeding and mucus discharge, and that he asked her for pain medication "to alleviate some of the pains and discomfort that he was experiencing, but [she told him] that he had to see the doctor first." Freeman claims that Nurse Parks "completely ignored [his] symptoms of pain and chose to let [him] suffer . . . ." Freeman further claims that nurses did not give offenders, including him, access to nurses during cell rounds, stating specifically that nurses "will not stop at an offender['s] door to conduct sick call," but instead will instruct the inmate to submit a sick call request. Freeman asserts that because he did not get treatment for his medical condition, despite submitting sick call requests, he had no access to medical care while waiting to see the doctor.

Nurse Parks claims in her sworn declaration that she medically evaluated Freeman on December 19, 2016, and that he reported "persistent exacerbation of his pre-existing ulcerative colitis." She states that Freeman "mentioned abdominal pain and discomfort but there were no reports of rectal bleeding." Nurse Parks states that "[c]omplaints of abdominal pain and discomfort were consistent with [Freeman's] GERD and . . . colitis," so she placed Freeman on the list to see the doctor "during the next available time." Nurse Parks avers that she "did not

2

objectively observe [Freeman] to be in acute distress [or] in unbearable or considerable pain." Nurse Parks maintains that after placing Freeman in line to see the doctor, he "still had access to medical care and to the nursing staff" during cell rounds, in the event his condition worsened.

There is no evidence that Freeman submitted any grievances, made any emergency request for treatment or otherwise complained about his condition again until December 27, 2016. At that time, Freeman filed an emergency grievance for medical care claiming that he was "experiencing symptoms and had developed an unbearable pain in [his] lower left abdomen." Defendant Nurse Wells responded that evening and determined that his grievance did not present an emergency situation. She advised Freeman that he was on the doctor's list.

Nurse Wells served as the Director of Medical Services at River North during the period that Freeman complains that he did not receive adequate medical treatment for his condition. Nurse Wells responded to several of Freeman's grievances concerning medical treatment that he received for his condition. She states that Freeman's grievances were "reviewed, investigated appropriately, and timely addressed" and that Freeman had access to nurses during cell rounds. If a nurse or an officer "objectively observed" Freeman "to be in acute distress, considerable or unbearable pain, or to be experiencing a medical emergency," Freeman "would have been brought to medical for evaluation." Freeman's reported symptoms of bleeding, abdominal pain, and mucus in his stool were consistent with and expected for someone with ulcerative colitis. Nurse Wells states that Freeman "received a variety of medications to try to relieve his symptoms, lessen his abdominal pain, and improve his overall comfort level."

Freeman contends that his condition was in fact an emergency requiring immediate medical treatment as reflected by his December 27, 2016 emergency grievance which informed the medical department that his pain had become "unbearable" and that he was "experiencing all

3

of the symptoms of ulcerative colitis." Freeman argues that the determination by Nurse Wells that his condition was not an emergency without examining him demonstrates that his grievances were not "investigated appropriately." He also challenges Nurse Wells's assertion that nurses made cell rounds claiming that "[n]o nurses ever rounded on [him] while he was in his cell suffering for 25 days from severe abdominal pains and rectal bleeding." Finally, Freeman disputes Nurse Wells' assertion that he received various medications. Instead, he contends that, during the twenty-five days that he suffered in pain from December 14, 2016 until he saw the doctor on January 10, 2017, he "received no medication other than Metamucil," which he did not receive until January 4, 2017, and which aggravated his symptoms.

Defendants maintain that Freeman was placed on the doctor's list on December 19, 2016 and would have been seen by a doctor by January 2, 2017, but the facility went on security lockdown from December 27, 2016 through January 3, 2017. During lockdown, only inmates with urgent medical issues are seen by a doctor, and ulcerative colitis "is not considered an urgent medical issue requiring immediate evaluation." The lockdown ended on January 3, 2017, and the facility rescheduled missed doctor's appointments based on urgency.

On January 3, 2017, Freeman submitted another emergency grievance to the medical department complaining that he was experiencing "severe symptoms of ulcerative colitis," including abdominal pain, rectal bleeding, and mucus discharge for approximately nineteen days. Freeman stated that his bleeding was more frequent and heavy and that the symptoms were "far [] worse" than they had been. He also stated that he still had not seen or been treated by a doctor. Nurse Crawford responded that morning, indicating that Freeman's grievance was not an emergency, that Freeman had been placed on the list to be seen by the doctor, and advised him to submit a medication renewal request. Nurse Crawford states in her declaration that on January 3,

2017, she "reviewed a medicine renewal request" from Freeman for mesalamine enemas, that Dr. Stevens approved the request and that Freeman received the medication "he requested."[4] Freeman maintains that he never submitted a medical renewal request, that he was not "on any medication for the treatment of ulcerative colitis to [be able] to request a renewal," and that he did not receive mesalamine enemas until January 10, 2017, the day on which he saw Dr. Stevens. Freeman suggests that Nurse Crawford "ignor[ed]" his "pleas for help," despite knowing that his symptoms had worsened and he continued to suffer in pain for nineteen days.

Freeman also filed a request for services on January 3, 2017, indicating that he had been waiting nineteen days to see a doctor while he suffered a "constant aching pain," as well as blood and mucus in his stool. Nurse Sellers responded the next day by indicating that was on the list to see the doctor.

On January 10, 2017, Dr. Stevens saw Freeman who described the severity of his abdominal pains and advised Dr. Stevens that he was still defecating blood. Dr. Stevens determined that Freeman should "continue" the psyllium fiber medication (Metamucil). Freeman states that he showed Dr. Stevens that he should not take that medication because it "shouldn't be provided to a person suffering from abdominal pains and rectal bleeding." Freeman claims that he also informed Dr. Stevens that psyllium fiber "is not a medication to treat [u]lcerative [c]olitis."

According to Freeman, Dr. Stevens disregarded everything that Freeman told him and continued the psyllium fiber medication. When Freeman advised Dr. Stevens that he had not been provided pain medication for twenty-five days, Dr. Stevens told Freeman to utilize "sick call procedures and inform the nurses that you are in pain." Freeman told Dr. Stevens that he

---

[4] Freeman contends that he received Metamucil on January 4, 2017, and did not receive mesalamine enemas until January 10, 2017.

5

filed two emergency grievances and that with both he was told the grievance was deemed not an emergency with responses which stated that he was on the doctor's list. Freeman explained that he also informed "multiple nurses" that he was in pain and he was told that he needed to see a doctor first. Freeman allegedly told Dr. Stevens that he was still having severe abdominal pains and would like to be prescribed a pain medication, but Dr. Stevens did not prescribe pain medication. Freeman also asked why he had not been prescribed an antibiotic to "fight off any infections that may have arisen due to the damaging inflammation and the daily bleeding," and Dr. Stevens said that he did not believe that Freeman had any infections in his body. Freeman asked him how he could know since no blood or stools were tested since June 2013. Dr. Stevens did not answer Freeman's question, but he said he would submit a referral for a gastroenterology consultation and order lab work. Freeman continued to suffer "severe abdominal pains and daily rectal bleeding" for nearly a month until February 7, 2017, when the symptoms "diminish[ed]."

Dr. Stevens explains that there are "many appropriate ways to treat ulcerative colitis" and that he examined Freeman on January 10, 2017 which included taking a history, performing a physical examination and providing Freeman medications to treat his medical conditions. Dr. Stevens noted that Freeman had chronic symptoms of ulcerative colitis and that Freeman reported abdominal pain, mucus, and bleeding. Dr. Stevens did not "objectively observe" Freeman in acute distress or "in unbearable or considerable pain." Dr. Stevens ordered that Freeman "continue to receive" mesalamine, Metamucil, and prilosec. Dr. Stevens also added MyTab to Freeman's medications and requested a gastroenterology consult for Freeman to be examined for potential colonic malignancies and ulcerations. Dr. Stevens stated that non-steroidal anti-inflammatory drugs, such as aspirin, ibuprofen, and naproxen can "trigger or worsen" the symptoms of ulcerative colitis, that opioids can cause gastrointestinal side effects,

6

and that acetaminophen has possible side effects of nausea, stomach pain, diarrhea, and loss of appetite. While Dr. Stevens avers that "[t]hese recognized side effects would be problematic while attempting to treat [] Freeman's ulcerative colitis flare up," he also states that "[d]uring the time period in question, [] Freeman received acetaminophen for his pain . . . because it provided the best clinical benefit to [] Freeman with the least side effects for his ulcerative colitis."[5]

Freeman submitted declarations from two inmates who state that, to no avail, they and others repeatedly reported to the pill call nurses that Freeman was suffering from stomach pain and bleeding from his rectum. One inmate states that Freeman was "frequently confined to his cell . . . on bed rest in a fetal position or on the toilet . . . ." The other inmate states that multiple inmates tried unsuccessfully to make arrangements to bring food trays back for Freemen so that he would not miss meals.

Freeman argues that Dr. Stevens and Nurses Wells, Crawford, Parks, and Sellers were deliberately indifferent to his serious medical needs. Freeman is clear that this action only pertains "to the 25 day denial of medical treatment" for his ulcerative colitis. The defendants argue that they were not deliberately indifferent, that Freeman received "reasonably adequate treatment," that any delay in treatment did not cause him harm, and that they are entitled to qualified immunity.

## II. DISCUSSION

**A. Motion for Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary

---

[5] There is no indication in the record that acetaminophen was dispensed to Freeman during the 25-day time period at issue.

7

judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## B. Deliberate Indifference to a Serious Medical Need

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Mere negligence does not constitute deliberate

indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837.

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009); *Estelle*, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). But, for delay in treatment to rise to the level of deliberate indifference, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs.*, Case No. 3:10cv90, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 3489661, at *6 (E.D. Va. 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

Viewing the record as a whole and drawing all reasonable inferences in favor of Freeman, I find no genuine dispute of material fact as to whether Nurses Wells, Crawford, Parks and Sellers were deliberately indifferent to Freeman's serious medical need. There is no issue that ulcerative colitis constitutes a serious medical need. Here, the defendant nurses responded to Freeman's requests for medical care, and they believed Freeman had no serious medical need for different treatment for his ongoing ulcerative colitis. Specifically, the undisputed evidence reflects that the defendant nurses placed Freeman on the list to see the doctor the day after his first request for services on December 14, 2016. The nurses responded promptly to Freeman's continued grievances, determined for each grievance that Freeman's condition was not a clinical

9

emergency, reminded Freeman that he was on the list to see the doctor, and instructed Freeman to return to medical if his symptoms worsened. Further, on January 3, 2017, Nurse Crawford reviewed Freeman's request for mesalamine enemas, provided the chart to Dr. Stevens for review, and Dr. Stevens approved the request.

Freeman alleges that the defendant nurses were deliberately indifferent by failing to give him pain medication, such as acetaminophen, during the 25-day period when he complained of severe abdominal pain and rectal bleeding. The defendant nurses aver that they did not objectively observe Freeman to be in acute distress or considerable pain during that time period. Further, when Freeman was treated by Dr. Stevens on January 10, 2017, Dr. Stevens did not recommend acetaminophen to treat Freeman's pain. Indeed, Dr. Stevens declined to order any of the pain medications requested by Freeman. Dr. Stevens instead indicated that it was appropriate for Freeman to continue his current medications, including Metamucil, mesalamine enemas, and MyTab. Dr. Stevens states in his declaration that "[n]on-steroidal anti-inflammatory drugs such as aspirin, ibuprofen, and naproxen can trigger or worsen the symptoms of ulcerative colitis, and opioids can cause gastrointestinal side effects (e.g., constipation, nausea, and vomiting). Even acetaminophen has possible side effects of nausea, stomach pain, diarrhea, and loss of appetite. These recognized side effects would be problematic while attempting to treat Mr. Freeman's ulcerative colitis flare up." Although the evidence reflects that Freeman was given acetaminophen during flare ups of his ulcerative colitis in 2013 and September 2017; for the 25-day period at issue in this case, the evidence does not support Freeman's claim the defendant nurses were deliberately indifferent by not providing acetaminophen to Freeman. Rather, Freeman alleges that he was given Metamucil during the time period at issue and his medical records reflect that he was prescribed mesalamine enemas on January 5, 2017. Freeman's

assertion that the defendant nurses were deliberately indifferent by failing to prescribe pain medication amounts to a disagreement with medical personnel over the course of treatment, which is not an Eighth Amendment claim. *Wright v. Collins,* 766 F.2d at 849.

The evidence also fails to support Freeman's claim that a delay in treatment caused him to suffer substantial harm. Freeman claims that he suffered from severe abdominal pain and rectal bleeding during the 25-day period that he waited to see Dr. Stevens. However, Freeman also alleges that, despite seeing Dr. Stevens and receiving additional medications on January 10, 2017, his symptoms continued until his ulcerative colitis flare up ended on February 7, 2017. Thus, the evidence reflects that Freeman's abdominal pains and rectal bleeding were caused by Freeman's underlying condition, rather than by a delay in treatment. The evidence does not support Freeman's contention that either visiting Dr. Stevens on an earlier date or receiving acetaminophen for pain would have alleviated his symptoms.

Overall, the evidence taken in the light most favorable to Freeman reflects that the defendant nurses' treatment of Freeman's ulcerative colitis and responsiveness to his complaints do not amount to deliberate indifference. Each of Freeman's grievances were reviewed, investigated and addressed in a timely manner. Freeman's reported symptoms were considered, and the defendant nurses determined that they were not a clinical emergency requiring an immediate consultation or referral to an outside facility. The nurses placed Freeman on the list to see the doctor promptly and continued to assess his condition when he filed a request. Freeman was provided his prescribed medications of Metamucil and mesalamine enemas. Importantly, the deliberate indifference alleged by Freeman—the defendant nurses' failure to give him pain medication over a 25-day period while he waited to see a physician— was not a course of treatment ultimately recommended or prescribed by Dr. Stevens. Freeman may disagree whether

his condition warranted pain medication. But no dispute exists that Dr. Stevens did not materially change the course of treatment or that any action (or inaction) by the defendant nurses made the condition more difficult to treat. "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, No. 2:09cv0647, 2010 WL 3812354, at *1–2 (S.D.W. Va. Sept. 22, 2010) (quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)) (finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."). As noted above, Freeman must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Estelle, 429 U.S. at 106. I find that the defendant nurses' treatment of Freeman's ulcerative colitis between December 15, 2016 and January 10, 2017 did not shock the conscience and was not intolerable to fundamental fairness. Freeman's disagreement with the defendant nurses' treatment is just that— a disagreement— and not deliberate indifference.

Regarding Dr. Stevens, the material facts are not in dispute that Dr. Stevens saw, examined, and provided treatment to Freeman on January 10, 2017, and there is no evidence that Dr. Stevens was aware of Freeman's increasing pain and bleeding prior to January 10, 2017. Freeman's disagreement with Dr. Stevens regarding the medications prescribed is not actionable under the Eighth Amendment. Accordingly, I grant Dr. Stevens's motion for summary judgment.

## III. CONCLUSION

For the reasons stated herein, I grant Defendants' motion for summary judgment.

        Entered: July 18, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge